EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Carreteras y Transportación de Puerto Rico, Representada por el Honorable Secretario de Transportación y Obras Públicas<br><br>Peticionario<br>v.<br><br>Adquisición de 780.6141 metros Cuadrados de Terreno, etc.<br><br>Wilfredo Cardona Figueroa y Otros<br><br>Parte con interés<br><br>Banco Popular de Puerto Rico Interventor | Certiorari<br><br>2005 TSPR 92<br><br>164 DPR \_\_\_\_ |

Número del Caso: CC-2004-241

Fecha: 28 junio 2005

Tribunal de Apelaciones:

                Región Judicial de San Juan

Panel integrado por su Presidente, el Juez Sánchez Martínez, Juez Cotto Vives y el Juez Vivoni del Valle.

Abogado de la Parte Peticionaria:

                Lcdo. Rubén E. Alayon del Valle

Abogado del Banco Popular de Puerto Rico:

                Lcdo. Fernando J. Valderrábano

Materia: Expropiación Forzosa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Carreteras y
Transportación de Puerto Rico,
Representada por el Honorable
Secretario de Transportación
y Obras Públicas

     Peticionario

        v.                      CC-2004-241

Adquisición de 780.6141 metros
cuadrados de Terreno, etc.

Wilfredo Cardona Figueroa y
Otros

     Parte con interés

Banco Popular de Puerto Rico
     Interventor

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico a 28 de junio de 2005.

El presente recurso nos permite resolver si un acreedor hipotecario, --parte con interés en una acción sobre expropiación forzosa--, tiene derecho a litigar frente al Estado la cantidad consignada en el tribunal como justa compensación. Contestamos en la negativa.

El acreedor hipotecario, tan solo puede recobrar del fondo de compensación aquella parte en que se haya lesionado o afectado su interés en la propiedad expropiada. Por lo que el titular de un derecho de garantía real sobre un inmueble expropiado, solo tiene derecho a ser citado y oído para que reclame del fondo de compensación la parte

correspondiente a su acreencia, si hubiera lesión a la garantía del crédito.

I

El 28 de marzo de 2000, la Autoridad de Carreteras y Transportación de Puerto Rico ("la Autoridad") presentó ante el Tribunal de Primera Instancia una petición de expropiación forzosa sobre un predio de terreno sito en Arroyo, con cabida de 780.6141 metros cuadrados. Dicho terreno fue expropiado con el propósito de realizar mejoras a la Carretera Núm. 3 que transcurre de Guayama a Patillas.

La parcela expropiada se segregó de una finca principal radicada en el Barrio Ancones de Arroyo con una cabida de 2,000 metros cuadrados, inscrita en el Registro de la Propiedad a favor de los esposos Wilfredo Cardona Figueroa y Elba Aquino Vega.[1] Como justa compensación, la Autoridad consignó en el tribunal la cantidad de $97,207. Se incluyeron en la demanda, como partes con interés, a los dueños de la finca así como a los deudores hipotecarios.

El 14 de abril de 2000, el foro de instancia emitió una Resolución en la que traspasó a la Autoridad el título de dominio absoluto sobre la propiedad en controversia.

---

[1] Este inmueble consta inscrito en el Registro de la Propiedad de Arroyo, Sección de Guayama, Finca Núm. 1439, al folio 206 del Tomo 52. Su descripción es la siguiente:
 RÚSTICA: Parcela de terreno radicada en el Barrio Ancones de Arroyo, compuesta de una cabida de 2,000.00 metros cuadrados, en colindancias por el: NORTE y OESTE: en 50.00 y 40.00 metros respectivamente, con la finca principal de la cual se segrega, por el SUR, en 50 metros, con la parcela "B" dedicada a uso público que la separa de la Carretera Estatal #3 y por el ESTE: en 40.00 metros con un camino vecinal.

El Banco Popular de Puerto Rico ("Banco Popular" o "Banco"), acreedor hipotecario de la finca expropiada,[2] presentó el 15 de agosto de 2000 su contestación a la petición de expropiación. En la misma, negó que la suma consignada por la Autoridad fuese una compensación justa y razonable para la adquisición de la propiedad. Además, adujo tener derecho a recibir intereses sobre la diferencia entre la cantidad consignada y la que en su día determinase el tribunal como justa compensación.

Así las cosas, el 30 de noviembre de 2000, el tribunal de instancia dictó una orden en la que expresó: "nada que proveer por el momento en cuanto al derecho del acreedor hipotecario".[3] Un año más tarde, en noviembre de 2001, el tribunal señaló una vista sobre el estado de los procedimientos para el 19 de febrero de 2002. El tribunal apercibió a las partes que debían comparecer con sus respectivos representantes legales, peritos tasadores e informes de valoración del referido terreno. A tales efectos, el Banco Popular sometió una moción en la cual informó al tribunal que se encontraba haciendo gestiones para contratar un perito tasador con el propósito de cumplir con su orden. El dueño registral no compareció al tribunal a impugnar la justa compensación.

---

[2] La finca principal de donde se segregó la parcela expropiada, estaba gravada por dos hipotecas: una, por la cantidad de $425,000, con intereses al 8.75% anual, en garantía de pagaré a favor de Banco Popular de Puerto Rico; y, la segunda por la suma de $100,000, con intereses al 8% anual, en garantía de pagaré a favor de Ford Motor Credit Company of Puerto Rico.
[3] Véase apéndice del recurso de *certiorari*, pág. 135.

En esta ocasión, el Tribunal de Primera Instancia, mediante orden de 16 de enero de 2002, le informó al Banco que su derecho en este pleito se limitaba a reclamar del fondo de compensación la parte proporcional de su acreencia. Añadió que no tenía que contratar un perito para litigar el asunto de la compensación, pues ese derecho es inherente del titular de la propiedad --en este caso los señores Cardona Figueroa y Aquino Vega-- y no del acreedor hipotecario.

A modo de reconsideración, el Banco presentó una moción en la cual alegó que sostuvo conversaciones con el dueño de la propiedad Cardona Figueroa y que éste le había expresado su total desinterés en comparecer al presente litigio. Explicó que Cardona Figueroa había presentado ante el tribunal federal una petición para acogerse al Capítulo 7 de la Ley de Quiebras y había obtenido un descargo de deuda conforme permite la legislación federal de quiebras. Asimismo, le informó al tribunal que había radicado una acción en cobro de dinero contra Cardona Figueroa y otros, en la que solicitaba la ejecución de la hipoteca que gravaba el bien expropiado. Por todo lo cual, Banco Popular entendió que poseía legitimación activa para presentar prueba en torno al valor en el mercado del inmueble o, en la alternativa, invocó la doctrina constitucional que confiere legitimación activa a favor de terceros.

Luego de varios trámites procesales que no es necesario comentar, el 14 de febrero de 2002, el tribunal de instancia emitió una orden en la que dispuso en parte: "[e]l acreedor no puede convertirse en titular registral . . . [t]iene derecho a ser citado y oído para que reclame del fondo de compensación la parte proporcional de sus acreencias, si hubiera lesión en la garantía de créditos."[4] Posteriormente, el 15 de marzo de 2002, el tribunal dejó sin efecto su determinación inicial y permitió al Banco Popular litigar la justa compensación para cubrir el monto de su acreencia.

El 4 de junio de 2002, la Autoridad solicitó la reconsideración de la anterior determinación. Alegó que el Banco Popular era un mero acreedor cuyo derecho se limitaba a cobrar su acreencia del fondo de compensación. En oposición a la moción de reconsideración, el Banco Popular argumentó que la misma fue tardía y solicitó una vista evidenciaria con el propósito de determinar la justa compensación del inmueble expropiado. **Finalmente, el Tribunal de Primera Instancia dejó sin efecto su orden de 15 de marzo de 2002 y mantuvo vigente la orden original que impedía al Banco Popular litigar la cuantía consignada como justa compensación.** El tribunal finalmente dictó sentencia en la que declaró la cantidad consignada por la Autoridad como la justa compensación por la expropiación del terreno.

---

[4] Véase apéndice del recurso de *certiorari*, pág. 163.

Ante esta última determinación, el Banco Popular recurrió al entonces Tribunal de Circuito de Apelaciones. El tribunal apelativo intermedio concluyó que el foro de instancia erró al negarle el derecho a ser oído al Banco Popular y determinó que dicha parte tenía derecho a litigar el valor de la suma consignada como justa compensación por la parcela de terreno expropiada. El foro apelativo intermedio indicó, específicamente, que el Banco tenía derecho a "litigar la valoración del inmueble expropiado, hasta el monto de su acreencia, para propósitos de la justa compensación."[5] Señaló también lo siguiente:

> Por otro lado, debemos señalar que, según el expediente del caso, el predio expropiado por la Autoridad de Carreteras tiene una cabida de 780.6141 metros cuadrados, mientras que la propiedad de los esposos Cardona Aquino, de la cual se segregó el referido predio con fines de expropiación, tenía una cabida de 2,000 metros cuadrados. En vista de que el solar expropiado formaba parte de uno de mayor cabida, **el Tribunal de Primera Instancia debe determinar qué efecto, si alguno, tuvo en el valor del remanente de la finca el hecho de la expropiación y, para ello, el Banco Popular podrá expresarse y presentar prueba a éstos (sic) efectos. Además, el foro *a quo* debe tener en cuenta que el monto de la acreencia del Banco Popular en la finca de mayor cabida** ascendía a $425,000 según el asiento del Registro de la Propiedad del 28 de junio de 1985.[6] (Énfasis nuestro.)

Inconforme, la Autoridad presentó un recurso de *certiorari* ante nosotros, en el que señaló la comisión de los siguientes errores:

> Erró el Tribunal de Circuito de Apelaciones al revocar la Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan

---

[5] Véase apéndice a recurso de *certiorari*, pág. 23.
[6] Í*bid.*

decretando que la justa compensación por el terreno expropiado es la cantidad (sic) $97,207.00.

Erró el Tribunal de Circuito de Apelaciones al decretar que el acreedor tiene derecho a litigar la justa compensación en contravención a las disposiciones de la ley de expropiación forzosa y la jurisprudencia interpretativa del Honorable Tribunal Supremo.

Inicialmente denegamos la expedición del recurso presentado; mas, en reconsideración, dictamos una orden de mostrar causa de por qué no se debía expedir el auto y revocar la determinación del tribunal apelativo. Ambas partes han comparecido y estando en posición de resolver lo hacemos conforme intimamos.

## II

Por estar íntimamente ligados los errores antes mencionados los mismos se discutirán en conjunto. La controversia medular del caso de epígrafe, requiere que se determine si el acreedor hipotecario puede litigar frente al Estado la cantidad consignada por éste como justa compensación en un proceso de expropiación forzosa, en una especie de subrogación en los derechos del dueño de la propiedad expropiada. Veamos.

Reiteradamente hemos expresado que el poder de expropiación del Estado es un atributo inherente a su poder soberano y como tal, de superior jerarquía a todos los derechos de propiedad. *ELA v. Registrador*, 111 D.P.R. 117 (1981); *ELA v. Rosso*, 95 D.P.R. 501, 536 (1967); *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961 (1953); *Autoridad sobre Hogares v. Corte*, 68 D.P.R. 54 (1948);

*McCormick v. Marrero*, 64 D.P.R. 260 (1944). Esta facultad soberana exige para su ejercicio el pago de la justa compensación y, que el proceso se lleve a cabo conforme dispone la Ley de Expropiación Forzosa de 1903, 32 L.P.R.A. secs. 2901 *et seq*. Véase, Art. II, Sec. 9 Constitución del Estado Libre Asociado de Puerto Rico; Art. 282 del Código Civil, 31 L.P.R.A. sec. 1113. Véase además, E. Freund, *The Police Power, Public Policy and Cosntitutional Rights*, Callaghan & Co., Chicago, 1904, pág. 541.

El procedimiento de expropiación es uno de naturaleza civil y aparece descrito detalladamente en la Ley de Expropiación Forzosa y la Regla 58 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III. El procedimiento se inicia mediante la presentación de la correspondiente demanda la cual "podrá ir dirigida contra los dueños de la propiedad, sus ocupantes y todas las demás personas con derecho o interés sobre la misma; o podrá ir dirigida contra la propiedad en sí." 32 L.P.R.A. sec. 2905; Regla 58.3 de las de Procedimiento Civil; *ELA v. Registrador*, *ante*. Las partes con interés se notifican, **"a los fines del derecho que puedan tener a la compensación que se fije por el valor de la propiedad expropiada**. . ." 32 L.P.R.A. sec. 2905. (Énfasis nuestro.)

La notificación a la parte con interés se da en función, y para propósitos de, que éstas puedan recuperar del fondo de compensación la porción correspondiente al interés que tengan sobre el bien expropiado. Así por

ejemplo se ha señalado lo siguiente: "All persons who have or claim any interest in the deposit should be served with the motion and have an opportunity **to be heard on the matter of equitable distribution of the deposit.**" Dolan, New Federal Procedure in Condemnation Actions, 39 *Va. L Rev*. 1071, 1079 (1953) (énfasis nuestro.) Véase además, Teague, *Condemnation of Mortgaged Property*, 44 Texas L. Rev. 1535 (1966). El interés particular que posea una persona o un acreedor, sin embargo, no lo faculta a exigir que la compensación consignada sea suficiente para satisfacer el monto total de ese interés o de su crédito. Véase discusión, *infra*.

Una vez presentada la declaración de adquisición y consignado el importe estimado como justa compensación, "el gobierno es investido del título" sobre la propiedad. *Pueblo v. 632 Metros Cuadrados de Terrenos*, *ante*, pág. 970-71. El título que se adquiere no es uno derivado del dueño anterior sino que es un título nuevo, independiente y absoluto; el cual dimana de la facultad del soberano. *Id*. El ejercicio del poder de expropiación forzosa extingue todos los derechos anteriores sobre la propiedad.

Habida cuenta de lo anterior, la inscripción que se haga del dominio a favor del Estado se hará libre de todo gravamen. Los gravámenes que afecten la propiedad, previo a su expropiación, **"se transfieren al fondo estimado para la justa compensación, el cual sustituye al inmueble en lo que respecta a las reclamaciones del dueño anterior y de**

**los acreedores**, . . ., **y dicha indemnización se extiende a la hipoteca"**, por lo menos hasta el límite del gravamen. *ELA v. Registrador, ante*, pág. 120. (Énfasis nuestro.)

El Artículo 161-2° de la Ley Hipotecaria, 30 L.P.R.A. sec. 2557, precisamente reconoce que la hipoteca se extiende a las indemnizaciones concedidas o debidas al propietario por expropiación forzosa del bien hipotecado. Efectuándose así la subrogación real, al quedar sustituido el inmueble por el fondo de justa compensación. L. Rivera Rivera, *Derecho Inmobiliario Registral Puertorriqueño*, Jurídica Editores, 2000, 2da ed., pág. 546; R. Roca Sastre, L. Roca-Satre Muncunill, *Derecho Hipotecario*, Ed. Bosh, Barcelona, Tomo V, 8va. Ed., 1997, págs. 278-79 ("la expropiación extingue **todas las cargas y derechos anteriores** sobre el bien expropiado, **los cuales se convierten**, . . . **en derechos sobre el justo precio**.")(Énfasis en original, énfasis nuestro.) A. López y López, V. Martés Penadés, *Derechos Reales y Derecho Inmobiliario Registral*, Tirant lo Blanch, Valencia, 1994, pág. 724 ("en estos supuestos la garantía real inmobiliaria se transforma en una garantía real (pignoraticia) sobre el importe de las indemnizaciones debidas o concedidas al propietario. . .")

Así, el dueño en pleno dominio y las partes con interés sobre el bien expropiado, incluyendo claro está el acreedor hipotecario, "recobran de dicha compensación el mismo interés proporcional que tenían en la propiedad

expropiada, por lo que éstos tienen entre sí unos derechos respecto la justa compensación." *Pueblo v. McCormick, ante*, pág. 946; *Roca Sastre, op. cit.*, pág. 279. En este proceso las partes con interés, incluyendo el dueño de la propiedad, tienen la oportunidad de ser oídos por el tribunal en relación a sus respectivas reclamaciones contra el fondo. *Pueblo v. Registrador*, 64 D.P.R. 130, 137-38 (1944). Le corresponderá al tribunal hacer la distribución correspondiente adjudicando los derechos que a cada cual le correspondan en la cantidad depositada. *Administración de Terrenos v. Nerashford Dev. Corp.,* 136 D.P.R. 801, 811 (1994).

Las partes con interés **no tienen un derecho de crédito frente al Estado** y éste "no está obligado a pagarle a cada parte interesada la porción que le corresponde de la compensación depositada." *Íbid*. Solamente y en ocasión de incumplir con su obligación de hacer un esfuerzo razonable por incluir en el pleito a todas las partes con interés legítimo sobre el inmueble expropiado, es "que surgiría una obligación directa del Estado hacia la parte no incluida y, aun así, dicha obligación sería subsidiaria a la que tienen el resto de las partes compensadas hacia la parte olvidada." *Íbid,* pág., 811 n. 6. El "gobierno no tiene interés como tal en la distribución de la compensación pagada a los varios reclamantes." *Pueblo v. 632 Metros Cuadrados de Terreno, ante*, pág. 971.

III

La Ley de Expropiación Forzosa y la Regla 58 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, exigen, como hemos visto, que inicie un procedimiento judicial para expropiar o adquirir cualquier propiedad para uso público y que pague el Estado una justa compensación. En ese procedimiento, es **el titular del dominio** quien tiene el derecho a formular sus defensas y objeciones tanto al carácter público del uso a que se destinará la propiedad, como a la cuantía declarada como justa compensación. *Estado Libre Asociado v. Fonalledas*, 84 D.P.R 573, 579 (1962). Véase además, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publicaciones JTS, 2000, tomo II, pág. 1082.

Cuando se cuestione la cantidad depositada como justo precio, el **"dueño,. . .,** aunque nominalmente aparezca como demandado, ocupa en realidad la posición de demandante, **y como  tal debe probar su derecho a recobrar una cantidad mayor que la consignada** . . . como valor de la propiedad y de los daños." *Pueblo v. Cuevas*, 66 D.P.R. 505, 508 (1946). (Énfasis nuestro.) Es al dueño de la propiedad a quien le incumbe entonces cuestionar la cantidad depositada como justa compensación y presentar la evidencia correspondiente sobre el valor en el mercado del inmueble expropiado. *E.g., Martínez v. Tribunal Superior*, 85 D.P.R. 1, 11 (1962); *Canino v. Tribunal de Expropiaciones*, 70

D.P.R. 152 (1949). En igual sentido, *Ralph v. Hazen*, 93 F.2d 68, 70 (D.C. Cir. 1937)("It should be remembered that the burden of proving value in condemnation proceedings is upon the property owner"); *U.S. v. 69.1 Acres of Land*, 942 F.2d 290, 292 (4th Cir. 1991); *U.S. v. 40.0 Acres of Land*, 175 F.3d 1133, 1140 (9th Cir.). En los estados véase, *Albahary v. City of Bristol*, 853 A.2d 577, 585 (Conn. 2004); *Dents Lake v. Davis*, 480 N.W.2d 720, 725 (N.D. 1992); *Conner v. Board of County Comm'rs*, 54 P.3d 1274, 1284 (Wyo. 2002); *Sierra Vista v. Cochise Enterprises, Inc.,* 697 P.2d 1125 (Ariz. Ct. App. 1984); *State Dept. of Highways v. Connes*, 711 P.2d 805 (Mont. 1985); *State Dept. of Transportation & Development v. Estate of Clark*, 432 So.2d 405, 408 (La. App. 1983). C. Wright, A. Miller, R. Marcus, *Federal Practice and Procedure*, West Pub., 1997, vol. 12, sec. 3054, pág. 261. ("The payment of estimated compensation into the court with a condemnation proceeding is nothing more than compliance with the constitutional right of the landowner.")

La justa compensación a que tiene derecho el dueño del predio expropiado es "el valor en el mercado de la finca, **sin tomar en consideración las cargas reales o gravámenes que afecten a la finca.**" *Administración de Terrenos v. Nerashford*, *ante*, pág. 807. (Énfasis nuestro.) En *Nerashford*, expresamente adoptamos el método de "valor en el mercado" --conocido como "undivided fee rule"-- para

fijar el justo valor.[7] Se considera justa una compensación que refleje el valor en el mercado de la finca, libre ésta de cargas o gravámenes. *ELA v. Fonalledas Córdova*, *ante*, pág. 579; *ELA v. Sucesión de Felipe Gautier*, 81 D.P.R. 580 (1959); *Pueblo v. García Chávez*, 66 D.P.R. 504 (1946). Véase además, 4 *Nichols on Eminent Domain,* sec. 12.01, págs. 12.02-12.32; R. Epstein, *Private Property and the Power of Eminent Domain*, Harvard U. Press, 1985, págs. 182-83.[8]

Por lo tanto, en esa determinación, **los gravámenes hipotecarios que pesan sobre la finca son elementos inconsecuentes o exógenos al cálculo**. Un tribunal por lo tanto, al pasar juicio sobre la suficiencia de la cantidad consignada por el Estado como justo valor, no deberá considerar los gravámenes que pesan sobre la misma. Ello responde al principio fundamental de que la compensación que el Estado paga es por la finca expropiada, no por los diferentes intereses que pesan sobre ella. *Pueblo v. 632 Metros Cuadrados de Terreno*, ante, pág. 945; *Olivero v. Autoridad de Carreteras*, 107 D.P.R. 301, 306 (1978); *E.L.A.*

---

[7] Ya en *Pueblo v. Huyke*, 70 D.P.R. 754, 757 (1950) habíamos indicado que el valor de la finca expropiada era "el precio que un comprador en una venta no forzada estaría dispuesto a pagar y aquel en que un vendedor en las mismas circunstancia, estaría dispuesto a vender, consideradas las condiciones en que se halle el terreno en la fecha de la expropiación, y el uso más productivo a que el dueño pudiere dedicarlo dentro de un futuro razonable cercano."

[8] Véase además, *Bailey v. United States*, 325 F.2d 571 (1st Cir. 1963); *United States v. Katz*, 213 F.2d 799 (1st Cir. 1954); *United States v. Ham*, 187 F.2d 265 (8th Cir. 1951); *St. Joe Paper Co. v. United States*, 155 F.2d 93 (5th Cir. 1946) *United States v. 12 Tracts of Land*, 268 F. Supp. 125 (D.C. N.D. 1967).

*v. Sociedad Protectora*, 100 D.P.R. 844, 849 (1972).   4
*Nichols on Eminent Domain,* sec. 12D.02[4], pág. 12D-69.

No obstante lo anterior, los derechos del acreedor
hipotecario en un proceso de expropiación forzosa no están
desprovistos de protección, pues como ya señalamos, al
extinguirse las cargas que pesan sobre el inmueble, éstas
se convierten en un derecho sobre el fondo de compensación;
es decir, sobre el justo precio.   *Rivera Rivera*, *op.cit*;
Roca Satre, *op. cit.*; *Protection of Morgagee's Investment
When the Security is Condemned in New York*, 36 Fordham L.
Rev. 586 (1968).

Por otro lado, cuando como en este caso, se expropia
solo una parte de la finca gravada con una hipoteca,[9] el
acreedor hipotecario podrá reclamar del fondo de justa
compensación aquella cantidad en que se haya perjudicado su
garantía y el gravamen subsiste sobre el remanente del
terreno. 4 *Nichols on Eminent Domain,* sec. 12D.02[4], pág.
12D-72; *Swanson v. United States*, *ante*.   El acreedor puede
satisfacer del fondo de justa compensación solo la porción
de su lesión atribuible a la finca expropiada.[10]

---

[9] Véase sobre este particular, 2 *Nichols on Eminent Domain*
sec. 5.03[6][c], Tercera Edición, págs. 5.156-5.164;
Teague, *Condemnation of Mortgaged Property*, 44 Texas L.
Rev. 1535 (1966); Huffaker, *The Mortgagee's Interest in the
Condemnation Award for a Partial Taking of the Mortgaged
Property*, 4 Texas Tech. L. Rev. 405 (1972).

[10] El acreedor hipotecario no puede pretender, que ha de
recibir la totalidad del fondo de compensación, así como
también, obtener el importe total del proceso de ejecución
de hipoteca instado sobre el remanente de la propiedad,
salvo claro está, que demuestre que ello es necesario para
cubrir la totalidad de la deuda.

La norma anterior es consecuente con el principio de indivisibilidad de la hipoteca, el cual postula que la hipoteca subsiste íntegra sobre cualquier parte de los bienes que se conserven, aunque el restante haya desaparecido. Art. 173 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2569. Véase también, *Rivera Rivera*, *op. cit*, págs. 490-494.

La finalidad de la hipoteca es garantizar o asegurar la satisfacción de un crédito dinerario mediante la realización del valor del bien dado en hipoteca. Desaparecida la hipoteca por motivo de la expropiación del bien dado en hipoteca, esa garantía real se convierte, mediante subrogación real, en un interés sobre el fondo de compensación. Si el fondo resulta insuficiente para satisfacer la totalidad del crédito, el acreedor tiene derecho a reclamar el balance de su acreencia a través de los procedimientos legales correspondientes. Cabe apuntar, finalmente, que aun cuando el procedimiento de expropiación forzosa afecta la garantía real del acreedor hipotecario, lo cierto es que no afecta su acreencia, la cual permanece incólume.

IV

Conforme lo antes expuesto y aplicando la normativa discutida a los hechos de este caso, es incuestionable que el Banco Popular, como acreedor hipotecario del inmueble expropiado, tenía que ser notificado del proceso de expropiación forzosa instado por la Autoridad. Su

participación en el proceso de expropiación se extiende, exclusivamente, a reclamar del fondo de justa compensación la parte proporcional que le corresponda como resultado de la lesión sufrida en su garantía, luego de la expropiación. Ello, en virtud de que la expropiación conllevó la extinción de la garantía real que gravaba el inmueble y, mediante subrogación real, el gravamen del Banco se transfirió al fondo de justa compensación.

Resolvemos por lo tanto, que el Banco como acreedor hipotecario no tiene derecho a litigar frente a la Autoridad el monto consignado por ésta como justa compensación. Ese es un derecho que le corresponde al titular del dominio del inmueble expropiado. La participación del Banco se circunscribe, como indicamos, a reclamar del fondo de compensación hasta el monto de la lesión sufrida por su garantía y no más. Lesión que deberá quedar establecida ante el foro de instancia antes de éste autorizar cualquier desembolso del fondo de compensación.[11]

Por lo tanto, la orden dictada originalmente por el Tribunal de Primera Instancia en ese sentido fue correcta, por lo que la determinación en contrario el tribunal apelativo intermedio debe ser revocada.

---

[11] Según se desprende del expediente, en la vista celebrada el 27 de agosto de 2002, la representación legal de la Autoridad de Carreteras y Transportación argumentó ante el tribunal que el remanente de la parcela expropiada era suficiente para garantizar la acreencia de Banco Popular. Si se logra probar ese hecho por preponderancia de prueba, al Banco Popular no le corresponde recobrar porción alguna del fondo de compensación, ya que su garantía no fue lesionada por la expropiación.

Ciertamente como indicamos ya, la extinción de la garantía no supone la desaparición o extinción de la acreencia; el Banco siempre tendrá a su disposición todos los mecanismos disponibles para reclamar de sus deudores el monto total de la deuda que éstos tienen para consigo, si es que la cantidad que le corresponda de la justa compensación, si alguna, resulte insuficiente a la luz de la lesión sufrida por la garantía.

Por su parte, la Autoridad sólo tiene la obligación de depositar la justa compensación, correspondiente al valor en el mercado de la propiedad expropiada como si ésta estuviera libre de cargas y gravámenes. Dicha cantidad entonces se debe distribuir entre los dueños registrales --los esposos Cardona Figueroa y Aquino Vega-- y las partes con interés en proporción a sus respectivos intereses. En este proceso las partes pueden levantar todos los reclamos que entiendan les asisten sobre el fondo de compensación.

V

Por los fundamentos expuestos en la Opinión que antecede, en la cual se hace formar parte integral de la presente, se dicta Sentencia revocatoria emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo aquí resuelto.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                        Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Carreteras y
Transportación de Puerto Rico,
Representada por el Honorable
Secretario de Transportación
y Obras Públicas

    Peticionario

       v.                            CC-2004-241

Adquisición de 780.6141 metros
cuadrados de Terreno, etc.

Wilfredo Cardona Figueroa y
Otros

    Parte con interés

Banco Popular de Puerto Rico
    Interventor

SENTENCIA

San Juan, Puerto Rico, a 28 de junio de 2005

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se dicta Sentencia revocatoria emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

                       Aida Ileana Oquendo Graulau
                       Secretaria del Tribunal Supremo