| | |
|---|---|
| Estado Libre Asociado de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>El Ojo de Agua Development, Inc.;<br>John Doe y Richard Doe<br><br>Recurridos | Certiorari<br><br>2020 TSPR 122<br><br>205 DPR _____ |

Número del Caso: CC-2016-662

Fecha: 9 de octubre de 2020

Tribunal de Apelaciones:

    Región Judicial de San Juan

Oficina del Procurador General:

    Lcda. Margarita Mercado Echegaray
    Procuradora General

    Lcdo. Luis Román Negrón
    Procurador General

    Lcda. Lorena Cortés Rivera
    Procuradora General Interina

    Lcdo. Guillermo Mangual Amador
    Procurador General Auxiliar

Abogados de la parte recurrida:

    Lcda. Cynthia Torres Torres
    Lcdo. Yusef Mafuz Blanco

Materia: Derecho Constitucional y Procedimiento Civil- La imposición de costas en procedimientos de expropiación forzosa; Ley de reclamaciones y pleitos contra el Estado- Doctrina de inmunidad soberana. El Estado renunció a su inmunidad soberana frente al pago de costas en procedimientos de expropiación forzosa. Será parte prevaleciente para efectos de concesión de costas en procedimientos de expropiación forzosa, el propietario del bien expropiado cuando reciba una suma mayor a la inicialmente consignada o prevalezca en el cuestionamiento de la autoridad para expropiar. Mientras que, se reconocerá como parte prevaleciente a la parte expropiante cuando la cantidad finalmente adjudicada en el caso sea igual o menor a la originalmente consignada.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Estado Libre Asociado de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>El Ojo de Agua Development, Inc.; John Doe y Richard Doe<br><br>Recurridos | CC-2016-662 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 9 de octubre de 2020.

El presente recurso nos provee la oportunidad de determinar si el Gobierno de Puerto Rico (Gobierno o peticionario) autorizó la imposición de costas en su contra en casos de expropiación forzosa. De contestar en la afirmativa, nos corresponde dilucidar cuál es la parte prevaleciente para efectos de la concesión de costas en este tipo de casos.

Valiéndonos de un ejercicio de hermenéutica legal, adelantamos que los estatutos y el trámite legislativo pertinente, permiten concluir que el Gobierno renunció a su inmunidad soberana frente al pago de costas en pleitos de expropiación forzosa y, consecuentemente, autorizó la imposición de éstas en su contra. Además, a base de una interpretación razonable de las disposiciones aplicables, resolvemos que la parte prevaleciente para fines de la

concesión de costas en casos de expropiación forzosa será aquella a favor de la cual el tribunal finalmente dicte sentencia, según los parámetros que estableceremos más adelante.

Pasemos a delinear los hechos y el trámite procesal que dieron lugar al caso ante nosotros.

I

El 10 de abril de 2008, el Gobierno presentó una *Petición de expropiación forzosa* (Petición) a nombre y en beneficio del Municipio de Juana Díaz, con el propósito de adquirir el pleno dominio de una parcela de 6.55 cuerdas de terreno, ubicada en el Barrio Cañas Arriba del mismo Municipio (parcela).[1] Dicha propiedad sería utilizada para llevar a cabo un proyecto denominado "Viviendas Unifamiliares, Carr. Estatal 14, Km. 20.6, Barrio Cañas Arriba de Juana Díaz, Puerto Rico".[2] Como partes con interés en este procedimiento, el Gobierno identificó a El Ojo de Agua Development, Inc., y a su presidente, el Sr. Humberto E. Escabí Trabal (en conjunto, parte con

---

[1] La parcela fue descrita de la forma siguiente:

> URBANA: Parcela de terreno radicada en la Carr. Estatal 14, Km. 20.6, Barrio Cañas Arriba del término municipal de Juana Díaz, con un área superficial de 25,762.6775 metros cuadrados equivalentes a [6.5547] cuerdas, según mensura realizada por el Municipio de Juana Díaz, en lindes: por el Norte, con la finca principal; por el Sur, con Carretera Estatal Núm. 14, Km. 20.6; por el Este, con Municipio de Juana Díaz; y por el Oeste, con la finca principal.

Véase *Petición de expropiación forzosa*, Apéndice de *Certiorari*, pág. 35.

[2] Íd.

interés o recurrida).[3] En cuanto a la justa compensación, el Gobierno estimó y depositó en la Secretaría del Tribunal de Primera Instancia, Sala de San Juan, la suma de $180,600.00. A su vez, el Gobierno acompañó la demanda con un legajo de expropiación el cual incluyó, entre otros documentos, una declaración para la adquisición y entrega inmediata de la propiedad.

Posteriormente, el foro primario emitió una *Resolución* en la que decretó que el título de pleno y absoluto dominio sobre el inmueble había quedado investido en el Gobierno. Así el trámite, el 22 de mayo de 2008, la parte con interés presentó una *Moción solicitando retiro de fondos bajo protesta*. Entre otros asuntos, cuestionó la cantidad consignada por el Gobierno como justa compensación y solicitó que se le permitiera presentar prueba sobre la cuantía que debía ser pagada como justo valor del bien expropiado. Trabada la controversia sobre justa compensación y luego de varios trámites procesales, el Tribunal de Primera Instancia celebró el juicio en su fondo. Después de aquilatar la prueba documental y testifical presentada por las partes, el foro primario emitió una *Sentencia* en la que determinó que el Gobierno debía pagar a la parte con interés la cantidad de $295,000.00 por concepto de justa compensación por la expropiación de la parcela. A su vez, razonó que la

---

[3] Además de El Ojo de Agua Development, Inc., y de su presidente, el Sr. Humberto E. Escabí Trabal (en conjunto, parte con interés o recurrida), el Gobierno identificó dos arrendamientos como partes con interés por su procedencia.

referida expropiación tuvo el efecto de dejar un remanente de 31.18 cuerdas de terreno enclavado y sin valor económico alguno, por lo que procedía una compensación adicional en daños a favor de la parte con interés, ascendente a $1,403,000.00. De esta forma, concluyó que la parte con interés tenía derecho a recobrar del Gobierno un total de $1,698,000.00, más los intereses legales sobre la suma adicional no consignada, contados desde la presentación de la Petición hasta su total consignación en el tribunal. Dado que el Gobierno había depositado en el tribunal la suma de $180,600.00 al presentar la Petición, la compensación adicional correspondiente fue de $1,517,400.00 más los intereses legales sobre dicha suma.[4]

En desacuerdo, el Gobierno presentó una *Moción de reconsideración y determinaciones adicionales de hechos*, pero ésta fue denegada. Inconforme, recurrió al Tribunal de Apelaciones mediante un recurso de apelación (Caso Núm. KLAN2015-00535), por medio del cual solicitó la revocación de la *Sentencia* emitida por el foro primario.

De otro lado, en lo pertinente a la controversia de autos, la parte con interés presentó oportunamente un

---

[4] Cabe señalar que, a pesar de que la Sentencia del Tribunal de Primera Instancia establece que la cantidad por concepto de justa compensación adicional asciende a $1,519,400.00, la realidad es que dicha suma contiene un error matemático. Según surge de la Sentencia, el foro primario determinó que la parte con interés tenía derecho a recobrar la suma total de $1,698,000.00. A esa cantidad, el foro primario debió restarle la suma de $180,600.00, correspondiente a la compensación originalmente consignada por el Gobierno, para un total de $1,517,400.00, siendo ésta la cuantía correcta. Claramente, el Tribunal de Apelaciones, habiéndose percatado del referido error matemático, hizo constar la cuantía correcta en su Sentencia. Véase *Sentencia* del Tribunal de Apelaciones, Apéndice de *Certiorari*, pág. 1679.

*Memorando de gastos y costas* juramentado (Memorando de costas o Memorando) ante el Tribunal de Primera Instancia, mediante el cual solicitó el pago de $50,350.00 por concepto de los gastos asumidos en el presente pleito.[5] Manifestó que las partidas allí identificadas eran ciertas y que fueron necesarias para la litigación del valor y los daños que sufrió la propiedad a raíz de la expropiación.[6]

El 26 de febrero de 2015, el Tribunal de Primera Instancia emitió una *Orden* por medio de la cual instruyó al Gobierno a presentar su posición respecto al Memorando de costas en el término de diez (10) días, de conformidad con la Regla 44.1(b) de Procedimiento Civil de 2009, *infra*. A su vez, le apercibió que, de no presentar su postura en ese término, entendería que se había allanado a la solicitud de la parte con interés. El 9 de marzo de 2015, el Gobierno presentó una solicitud de prórroga para oponerse al Memorando de costas.

Por su parte, el 10 de marzo de 2015, la parte con interés solicitó la aprobación del Memorando de costas sin oposición del Gobierno. Expuso que el término de diez (10) días dispuesto por la Regla 44.1 (b) de Procedimiento Civil de 2009, *infra*, era uno improrrogable por lo que, no habiendo el Gobierno presentado su escrito en oposición

---

[5] Véase *Memorando de gastos y costas*, Apéndice de *Certiorari*, págs. 583-584.

[6] Copia del referido escrito fue notificada al Gobierno el 23 de febrero de 2015. Véase *Memorando de gastos y costas,* Apéndice de *Certiorari*, págs. 583-584.

dentro de ese término, procedía la aprobación del Memorando sin considerar su posición.

Así el trámite, el 27 de marzo de 2015, el Tribunal de Primera Instancia emitió una *Orden* en la que concedió al Gobierno una prórroga de diez (10) días para presentar su moción en oposición al Memorando de costas. En desacuerdo, el 31 de marzo de 2015, la parte con interés presentó una *Moción de reconsideración o en oposición a prórroga concedida y de aprobación de memorando de costas*. Reiteró que el foro primario carecía de facultad para prorrogar el término con el que contaba el Gobierno para presentar su oposición al Memorando de costas. Conforme a ello, solicitó que se dejara sin efecto la concesión de la prórroga y que se declarara *con lugar* el Memorando de costas.

El 8 de abril de 2015, el Tribunal de Primera Instancia emitió una *Orden*[7] en la que aprobó el Memorando de costas sin considerar la posición del Gobierno.[8]

Ante ello, el Gobierno presentó una *Moción de reconsideración a orden* en la que esbozó que su moción en oposición al Memorando de costas fue presentada oportunamente, por ser de aplicación el término adicional de tres (3) días dispuesto por la Regla 68.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Así, solicitó

---

[7]   Véase *Orden*, Apéndice de *Certiorari*, págs. 604-605.

[8]   Valga señalar que el Gobierno presentó su escrito en oposición al Memorando de costas el 9 de abril de 2015. Véase *Oposición a memorando de costas y gastos*, Apéndice de *Certiorari*, págs. 599-603.

al foro primario que reconsiderara su *Orden*, y determinara que las costas reclamadas eran improcedentes en derecho. El 7 de mayo de 2015, el foro primario denegó la Moción de reconsideración presentada por el Gobierno.[9]

Insatisfecho, el Gobierno presentó un recurso de *certiorari* ante el Tribunal de Apelaciones en el que planteó que el foro primario incidió al no considerar su escrito en oposición al Memorando de costas y al conceder las costas reclamadas en el presente caso, a pesar de que éstas resultaban improcedentes en derecho por tratarse de un caso de expropiación forzosa.[10] En la alternativa, esbozó que el Tribunal de Primera Instancia erró al conceder las partidas incluidas en el Memorando a pesar de que no se justificaban.[11]

Luego de varias incidencias procesales, el Tribunal de Apelaciones emitió una *Sentencia* por medio de la cual modificó y confirmó la *Sentencia* del Tribunal de Primera Instancia.[12] La modificación se realizó a los únicos efectos de dictaminar que, una vez el Gobierno pague la suma adjudicada como justa compensación por el remanente, el título de dominio sobre dicho predio quedará investido en el Gobierno para el beneficio del Municipio de Juana Díaz. El foro apelativo intermedio razonó que, de lo

---

[9] Véase Apéndice de *Certiorari*, págs. 609-610.

[10] Véase *Certiorari civil*, Apéndice de *Certiorari*, págs. 552-582.

[11] Más adelante, los recursos de apelación y *certiorari* presentados por el Gobierno fueron consolidados. Véase *Resolución*, Apéndice de *Certiorari*, págs. 756-758.

[12] Véase *Sentencia*, Apéndice de *Certiorari*, págs. 1639-1684.

contrario, la parte con interés estaría recibiendo una doble compensación. De otro lado, una mayoría de los jueces del Panel del Tribunal de Apelaciones que atendió el caso (Panel), confirmó la *Orden* del foro primario relacionada con la concesión de las costas. Además, la mayoría de los jueces del referido Panel determinó que el foro primario no erró al declarar *con lugar* el Memorando de costas sin considerar la posición del Gobierno, pues el escrito a esos efectos fue presentado pasado el término jurisdiccional dispuesto para ello. Añadió que, de todas formas, el Gobierno no incluyó en su escrito en oposición argumentos que pudieran tener el efecto de alterar la determinación tomada por el Tribunal de Primera Instancia. Indicó que, en las circunstancias particulares del presente caso, en el cual la parte con interés recibió una compensación mucho mayor a la consignada originalmente por el Gobierno, resultaba sensato concluir que la parte con interés fue la parte prevaleciente en el pleito y que, por tanto, era la parte con derecho a recibir el pago de las costas. A esos efectos, razonó lo siguiente:

> […] [C]on su evidencia pericial, [la parte con interés] pudo demostrar que el remanente quedó enclavado, así como la justa compensación que se debía satisfacer para ello y que tenía derecho a una suma mayor a la que el [Gobierno] estimó por el predio a expropiar que consignó en el tribunal. Tomamos en cuenta que, como cuestión de hecho, se dispuso que debía recibir $1,517,400 adicionales a los que estimó el [Gobierno]. Por consiguiente, como parte vencedora que consideramos y resolvemos que es, la [p]arte con [i]nterés tiene derecho a recobrar en calidad de costas todos aquellos

gastos razonables en los que se vio precisada a incurrir para defenderse y prevalecer en este pleito. El [Tribunal de Primera Instancia] actuó correctamente al así disponerlo.[13]

Por otro lado, la mayoría de los jueces del referido Panel se negó a dilucidar la procedencia de las partidas recogidas en el Memorando de costas, por tratarse de un planteamiento realizado por primera vez a nivel apelativo.[14]

En desacuerdo con el dictamen del Tribunal de Apelaciones, el 20 de mayo de 2016 el Gobierno presentó una *Moción de reconsideración*,[15] pero ésta fue denegada.[16]

Oportunamente, el Gobierno instó ante este Tribunal el recurso de epígrafe, en el que planteó lo siguiente:

> A. Erró el Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia de disponer del monto de la justa compensación del terreno expropiado y de los daños al

---

[13] Véase *Sentencia*, Apéndice de *Certiorari*, págs. 1679-1680.

[14] Por su parte, a través de un *Voto conforme y disidente*, la Juez Emmalind García García expresó que estaba de acuerdo con la determinación de la mayoría del Panel del Tribunal de Apelaciones relacionada con la justa compensación, pero no así con la decisión de confirmar la *Orden* del foro primario sobre el pago de costas. Entre otros asuntos, señaló que las Reglas de Procedimiento Civil de 2009, *infra*, no contienen una autorización expresa para la imposición de costas en contra del Gobierno en casos de expropiación forzosa y que, de así haberlo querido el legislador, hubiera enmendado el referido cuerpo de reglas a esos efectos. Argumentó además que la Ley de 12 de marzo de 1903, según enmendada, conocida como la Ley de Expropiación Forzosa, 32 LPRA secs. 2901-2913, contempla la forma de compensar a la parte con interés por los gastos en los que incurra durante el pleito. Esto es, mediante el pago de intereses sobre la suma adicional adjudicada desde la fecha de la adquisición de la propiedad hasta el pago de la diferencia, a fin de mejorar la compensación concedida originalmente. Razonó que esa es "la forma de compensar que consideró el legislador". Véase *Voto conforme y disidente de la Juez García García*, Apéndice de *Certiorari*, págs. 1681-1684.

[15] Véase *Moción de reconsideración*, Apéndice de *Certiorari*, págs. 1685-1694.

[16] Véase *Resolución*, Apéndice de *Certiorari*, págs. 1705-1710.

remanente, sobre las bases de la valoración del perito tasador de la parte con interés.

B. Erró el Tribunal de Apelaciones al sostener la determinación del Tribunal de Primera Instancia de ordenar la consignación [del] pago de la sentencia dentro del término de treinta (30) días.

C. Erró el Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia que aprobó el Memorando de [c]ostas de la [p]arte con [i]nterés.

El 16 de diciembre de 2016, emitimos una *Resolución* mediante la cual expedimos el auto de *certiorari* solicitado limitado al tercer señalamiento de error.[17] Así las cosas, contando con los alegatos de las partes y tras varias incidencias procesales,[18] nos encontramos en posición de resolver. Esto, no sin antes exponer el derecho aplicable a la controversia planteada.

## II

### A. Ley de reclamaciones y pleitos contra el Estado

---

[17] Véase *Resolución* del 16 de diciembre de 2016. Oportunamente, el Gobierno presentó *una Moción de reconsideración*, pero ésta fue denegada. Véase *Resolución* del 27 de enero de 2017. Una segunda moción de reconsideración fue igualmente denegada. Véase *Resolución* del 24 de febrero de 2017.

[18] Por motivo de la aplicación al caso de autos de la Sección 301 del Título III del Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 USC 2161(a), ordenamos el archivo administrativo de este recurso y la paralización de los procedimientos en el caso hasta tanto una de las partes nos certificara que la paralización automática había sido levantada, ya fuera por la conclusión del procedimiento de quiebras o debido a una solicitud a esos efectos, según permitido por la Sección 362(d) del Código Federal de Quiebras, 11 USCA sec. 362 (d). Después de varias incidencias procesales y tras examinar *una Moción informativa sobre acuerdo alcanzado para modificar el alcance de la paralización automática* presentada por el Gobierno, el 27 de febrero de 2020 emitimos una *Resolución* en la que ordenamos la continuación de los procedimientos en el presente recurso, según las condiciones acordadas por las partes en la estipulación aprobada por la Hon. Laura Taylor Swain en el caso *In re* Commonwealth of Puerto Rico, Núm. 17-BK-3283-LTS, en el Tribunal Federal de Quiebras. Véase *Resolución* del 27 de febrero de 2020.

La doctrina de inmunidad soberana, incorporada a nuestro ordenamiento en el año 1913 por fíat judicial, Porto Rico v. Rosaly, 227 US 270 (1913), establece, esencialmente, que el Gobierno no puede ser demandado sin su consentimiento. Berríos Román v. E.L.A., 171 DPR 549, 555-556 (2007); Defendini Collazo *et al. v.* E.L.A., Cotto, 134 DPR 28, 40 y 47 (1993).

La Ley Núm. 104 del 29 de junio de 1955, según enmendada, conocida como Ley de reclamaciones y pleitos contra el Estado (Ley Núm. 104), 32 LPRA sec. 3061 *et seq.*, forma parte de varios de los estatutos aprobados por la Asamblea Legislativa a través de los años, que permitieron la presentación de demandas en contra del Gobierno.[19] Berríos Román v. E.L.A., *supra*, pág. 556.

En concreto, la referida legislación autoriza la presentación de demandas sobre daños y perjuicios en contra del Gobierno bajo las condiciones y salvaguardas procesales expresamente dispuestas en la misma.[20] Berríos Román v. E.L.A., *supra*, pág. 556. A su vez, enumera las

---

[19] La Ley Núm. 76 de 13 de abril de 1916, conocida como la Ley para autorizar demandas contra el Pueblo de Puerto Rico, 32 LPRA ant. sec. 3061, fue la primera ley local que autorizó la presentación de demandas en contra del Gobierno. Defendini Collazo et al. v. E.L.A., 134 DPR 28, 47 (1993). Inicialmente, ésta sólo permitía que se presentaran demandas en contra del Gobierno sobre reivindicación de bienes muebles e inmuebles o derechos sobre éstos, así como por daños y perjuicios fundamentados en contratos pactados después del 1 de julio de 1916. Sin embargo, fue enmendada en varias ocasiones, entre éstas, por la Ley Núm. 11 de 18 de abril de 1928, 32 LPRA ant. secs. 3061-3064, cuya enmienda permitió las demandas en contra del Gobierno por reclamaciones de daños y perjuicios en general. Íd., págs. 47-48. La Ley Núm. 76 de 1916 fue derogada por la Ley Núm. 104 del 29 de junio de 1955, según enmendada, conocida como Ley de reclamaciones y pleitos contra el Estado, 32 LPRA sec. 3061 *et seq*. Íd., pág. 48.

[20] Véase Art. 2 de la Ley Núm. 104, 32 LPRA sec. 3077.

situaciones en las que el Gobierno conserva su inmunidad.[21] Conforme a ello, hemos expresado que esta legislación "constituye una renuncia parcial condicionada de la inmunidad soberana que protege al Estado". _Defendini Collazo et al. v. ELA_, *supra*, págs. 39-40.

De otra parte, es preciso señalar que el Art. 8 de la Ley Núm. 104, 32 LPRA sec. 3083, establece, en lo pertinente, que "[l]a imposición de costas se regirá por el procedimiento ordinario". Íd. De esta forma, a través de la Ley Núm. 104, el Gobierno no sólo proveyó autorización para ser demandado en las acciones allí delimitadas y prestar indemnización hasta el máximo señalado por esa ley, sino que además permitió la imposición del pago de costas en su contra, cuando resulte ser la parte perdidosa en demandas presentadas al amparo de ese estatuto.

Así lo reconocimos en _Sucn. Arroyo v. Municipio de Cabo Rojo_, 81 DPR 434 (1959). Allí, luego de indicar que previo al año 1955 en Puerto Rico no existía precepto legal alguno que permitiera a los tribunales imponer costas en contra del Gobierno en las acciones autorizadas por éste —dado que el Art. 5 de la Ley Núm. 76 de 1916, 32 LPRA ant. sec. 3065, categóricamente expresaba que "[l]os honorarios de abogado, desembolsos y costas no serán nunca impuestos contra El Pueblo de Puerto Rico"—, reconocimos

---

[21]  Véase Art. 6 de la Ley Núm. 104, 32 LPRA sec. 3081.

el cambio de la postura legislativa sobre este asunto.

Sucn. Arroyo v. Municipio de Cabo Rojo, *supra*, pág. 436.

En detalle, expresamos lo siguiente:

> **Ahora bien, ¿se alteró esta regla de exclusión en virtud de la Ley [N]úm. 104 de 1955? En cuanto a las costas es indudable que sí.** **Las palabras taxativas del legislador cierran toda posibilidad de discusión en esta materia.** Primero: el [A]rt. 11 de la referida ley derogó la prohibición general que contenía la Ley [N]úm. 76 de 1916, según enmendada. […]. **Segundo: el [A]rt. 8 dispone que la sentencia contra el Estado en las acciones autorizadas** '... no incluirá en ningún caso el pago de intereses por período alguno anterior a la sentencia ni concederá daños punitivos', pero **a renglón seguido añade en términos que no pueden ser más explícitos: 'La imposición de costas se regirá por el procedimiento ordinario'.** […]. Por lo tanto, no caben reservas ni distingos respecto a los gastos o desembolsos que tienen el concepto de 'costas', según lo dispuesto en el [A]rt. 327 del Código de Enjuiciamiento Civil (32 LPRA [ant.] sec. 1461) y en la Regla 44 de Procedimiento Civil de 1958 (32 LPRA Sup. Acum. 1958, Ap. R. 44). **Si el Estado es la parte perdidosa en una acción autorizada por la Ley [N]úm. 104 de 1955, la imposición de costas es obligatoria. En este concepto el Estado es responsable como cualquier ciudadano particular: es bien sabido que las disposiciones legales vigentes sobre 'costas' no conceden discreción alguna a los tribunales, por lo cual deben imponerlas siempre a la parte contra quien se dicta sentencia.** (Énfasis nuestro). Sucn. Arroyo v. Municipio de Cabo Rojo, *supra*, págs. 436-437.

Vemos, pues, que hace más de sesenta (60) años este Tribunal claramente reconoció que a través de la Ley Núm. 104 el Gobierno prestó su consentimiento a la imposición de costas en su contra cuando resulta ser la parte

perdidosa en acciones autorizadas por esa ley. Sucn. Arroyo v. Municipio de Cabo Rojo, *supra*, pág. 436.

No obstante, por tratarse el caso de autos de un pleito sobre expropiación forzosa, resulta indispensable considerar que la propia Ley Núm. 104 establece que sus disposiciones en nada "afectará[n] **las acciones sobre […] expropiaciones** y todas aquéllas para las que existe legislación específica, **las que seguirán rigiéndose por las leyes aplicables**". (Énfasis nuestro). Art. 4 de la Ley Núm. 104, 32 LPRA sec. 3079.

## B. Expropiación forzosa

El derecho al disfrute de la propiedad, consagrado en el Art. II, Sección 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. PR, LPRA, Tomo 1, está supeditado al poder inherente del Estado para establecer restricciones sobre las propiedades privadas en favor del bienestar común. Municipio de Guaynabo v. Adquisición, 180 DPR 206, 216 (2010); Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 424 (2008); A.C.T. v. 780614m2, 165 DPR 121, 130 (2005). Véase, además, E.L.A. v. Rosso, 95 DPR 501, 536 (1967). Como parte de ese poder inherente se encuentra la facultad del Estado para realizar expropiaciones forzosas, entiéndase, "el poder soberano que reside en el Estado para adquirir el dominio de una propiedad sita dentro de sus límites territoriales". Administración de Terrenos de Puerto Rico v. Corporación Pesquera Henares, Inc., 201 DPR 14, 21 (2018); Municipio

de Guaynabo v. Adquisición, *supra*, pág. 216.  Cónsono con lo anterior, hemos expresado que "toda propiedad se posee sujeto al poder del Estado de expropiarla para fines públicos".  Aut. Tierras v. Moreno & Ruiz Dev. Corp., *supra*, pág. 425.

Ahora bien, la potestad del soberano para llevar a cabo expropiaciones forzosas se encuentra limitada por la Sección 9 de la Carta de Derechos de la Constitución de Puerto Rico, la cual dicta, en lo pertinente, que: "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley". Art. II, Sec. 9, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 333.  Véase, también, Art. 282 del Código Civil, 31 LPRA sec. 1113.[22]

Consiguientemente, a través de la justa compensación se procura:

> […] [C]olocar al dueño de la propiedad en una situación económica equivalente a la que se encontraba con anterioridad a la expropiación de su propiedad. De ordinario, "[l]a justa compensación a que tiene derecho el dueño de un bien expropiado es aquella cantidad que representa todo el valor de la propiedad al tiempo de la incautación". E.L.A. v. Fonalledas Córdova, *supra*, pág. 579.  Además, hemos reconocido que el propietario puede reclamar la compensación por los daños que, por motivo de la expropiación, le fueron ocasionados al remanente de su propiedad. Íd. Amador Roberts v. ELA, 191 DPR 268, 278-279 (2014).

---

[22] Éste dispone que "[n]adie podrá ser privado de su propiedad sino por autoridad competente, por causa justificada de utilidad pública o beneficio social, y mediante el pago de una justa compensación que se fijará en la forma provista por ley".  31 LPRA sec. 1113.

Por otra parte, hemos sido consistentes al señalar que el procedimiento de expropiación forzosa es de naturaleza civil y debe llevarse a cabo de conformidad con la Ley de 12 de marzo de 1903, según enmendada, conocida como la Ley de Expropiación Forzosa, 32 LPRA secs. 2901-2913 y la Regla 58 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Municipio de Guaynabo v. Adquisición, *supra*, pág. 217; A.C.T. v. 780614m2, *supra*, pág. 130; A.C.T. v. Inesta, 165 DPR 891, 902 (2005); Adm. De Terrenos v. Nerashford Dev. Corp., 136 DPR 801, 807 (1994).

La Ley de Expropiación Forzosa, *supra*, dispone que el procedimiento de expropiación iniciará con la presentación de una petición o demanda a esos efectos ante el Tribunal de Primera Instancia, Sala de San Juan, "siguiendo las disposiciones de la Regla 58 de Procedimiento Civil [de 2009] […]". Sección 4 de la Ley de Expropiación Forzosa, 32 LPRA sec. 2905. El estatuto provee para que el demandante presente junto con la demanda una declaración para la adquisición y entrega material de la propiedad a ser expropiada, firmada por la persona autorizada en ley para realizar la expropiación, en la cual deberá consignarse que se procura la adquisición de la propiedad para uso del Estado o para alguna agencia o entidad, así como el uso específico que se dará a la misma. Sección 5(a) de la Ley de Expropiación Forzosa, 32 LPRA sec. 2907.

Una vez la declaración es presentada y la cantidad estimada como justa compensación es depositada en el

tribunal, el título de dominio de la propiedad quedará investido en el Gobierno y con ello, "el derecho a justa compensación por la misma quedará investido en la persona o personas a quienes corresponda". Sección 5(a) de la Ley de Expropiación Forzosa, *supra*.

De otro lado, la parte demandada podrá comparecer o presentar su contestación a la demanda ante el tribunal. Sin embargo, el no haber llevado a cabo tales acciones no será impedimento para que presente prueba sobre la cuantía de la compensación que deba pagarse por su propiedad en la vista celebrada a tales efectos, ni evitará que participe en la distribución de la suma adjudicada. Regla 58.5 de Procedimiento Civil de 2009, 32 LPRA Ap. V.

En ese contexto, hemos expresado que cuando la oposición de la parte demandada en un pleito de expropiación forzosa se circunscribe a su inconformidad con la compensación ofrecida por el Gobierno, el peso de la prueba se invierte, siendo entonces el dueño del bien el llamado a demostrar su derecho a obtener una suma mayor. Municipio de Guaynabo v. Adquisición*, supra*, págs. 226-227; Martínez Rivera v. Tribunal Superior, 85 DPR 1, 11 (1962); Pueblo v. 632 Metros Cuadrados de Terreno, 74 DPR 961, 976 (1953); Pueblo v. García, 66 DPR 504 (1946). Por esta razón, hemos indicado que en los casos en los que la controversia se ciñe a determinar si la suma consignada por el Gobierno como justa compensación debe ser superior,

el demandado pasa a asumir el rol de la parte demandante. Municipio de Guaynabo v. Adquisición, *supra*, pág. 226.

Adjudicada una suma mayor al dueño del bien expropiado, corresponderá como parte integral de la justa compensación a concederse, el pago de intereses. E.L.A. v. Rexco Industries, Inc., 137 DPR 683, 687 (1994). Esto, en tanto y en cuanto el mandato constitucional de justa compensación requiere que se cumpla con colocar al dueño del bien expropiado en una posición económica tan buena como en la que se hubiera encontrado si la propiedad no hubiera sido expropiada. Íd.

En el precitado caso, explicamos que "**[i]nicialmente, [la Ley de Expropiación Forzosa] no proveía para el pago de interés por esa diferencia. La Ley Núm. 2 de 1ro de abril de 1941** (32 [LPRA] secs. 2905 y 2907) **lo incluyó por la tardanza del [Gobierno] en compensar en su totalidad**". (Énfasis nuestro). Íd. Allí, llenamos un vacío en la Ley de Expropiación Forzosa, la cual no contemplaba las fluctuaciones del mercado y se limitaba a disponer el pago de intereses a razón del seis (6) por ciento anual sobre la cantidad finalmente concedida como justo valor de la propiedad, contado desde la fecha de su adquisición hasta la fecha del pago. Por dicha razón, en función del referido mandato constitucional, resolvimos que "la diferencia entre la cantidad que se determine finalmente como justa compensación en una expropiación y la que consignó inicialmente el Estado, hay que sumárseles los

intereses que surjan del […] Reglamento 78-1 de la Oficina del Comisionado de Instituciones Financieras". Íd., págs. 689-691.

Nuestros pronunciamientos en E.L.A. v. Rexco Industries, Inc., *supra*, propiciaron la aprobación de la Ley Núm. 187-1997, la cual enmendó las Secciones 5(a) y 5(b) de la Ley de Expropiación Forzosa, *infra*, "para reconciliar las realidades del mercado local de conformidad con los parámetros razonables que se dispone[n] en la Regla 44.3 de las de Procedimiento Civil". Exposición de Motivos de la Ley Núm. 187-1997 (1997 (Parte 2) Leyes de Puerto Rico 1959). Véase, además, J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 1era ed., San Juan, Pubs. JTS, 2000, T. II, págs. 1086-1087.

De esta forma, la Sección 5(a) de La Ley de Expropiación Forzosa, dispone que la justa compensación:

> [D]eberá determinarse y adjudicarse en dicho procedimiento, y decretarse por la sentencia que recaiga en el mismo, debiendo la sentencia incluir, como parte de la justa compensación concedida, intereses al tipo anual que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia de conformidad con la Regla 44.3, Ap. III de este título, sobre la cantidad adicional finalmente concedida como valor de la propiedad a contar desde la fecha de la adquisición, y desde dicha fecha hasta la fecha del pago; pero los intereses no deberán concederse sobre aquella parte de dicha cantidad que haya sido depositada y pagada en el tribunal. Sección 5(a) de la

Ley de Expropiación Forzosa, 32 LPRA sec. 2907 (ed. 2004).[23]

A su vez, establece que **en caso de que la compensación finalmente concedida exceda la cantidad de dinero originalmente recibida por la persona con derecho a la misma**, "el tribunal dictará sentencia contra el [Gobierno] de Puerto Rico […] por la cantidad de la deficiencia". (Énfasis nuestro). Íd.

Mientras que, la Sección 5(b) del referido estatuto especial lee como sigue:

> **En cualquier sentencia dictada en un procedimiento de expropiación forzosa para la adquisición de propiedad privada** o de cualquier derecho sobre la misma para uso público o aprovechamiento en beneficio de la comunidad, **entablado por el [Gobierno de Puerto Rico] […] en que la cantidad determinada por el tribunal como justa compensación por la propiedad […] sea mayor que la cantidad fijada por el demandante y depositada en el tribunal como justa compensación por tal propiedad o derechos en la misma, el [Gobierno] de Puerto Rico pagará el importe de la diferencia entre la suma así fijada por el demandante y depositada por él en el tribunal y la cantidad que a tal efecto haya determinado el tribunal como justa compensación por dicha propiedad o derechos en las mismas objeto de tal procedimiento, con intereses a razón del tipo de interés anual que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que esté en vigor al momento de dictarse la sentencia, de conformidad con la Regla 44.3, Ap. III de este título, sobre tal diferencia a contar desde la fecha de la adquisición de tal propiedad o derechos y desde esta fecha hasta la del pago de dicha diferencia** […]. (Énfasis nuestro). Sección

---

[23] A pesar de que la Sección 5(a) de la Ley de Expropiación Forzosa, 32 LPRA sec. 2907, sufrió varias enmiendas, la versión vigente conservó una redacción sustancialmente idéntica a la citada.

5(b) de la Ley de Expropiación Forzosa, 32 LPRA sec. 2908 (ed. 2004).[24]

## C. *Imposición de costas en procedimientos de expropiación forzosa*

Las Reglas de Procedimiento Civil para el Tribunal General de Justicia de 1958 (Reglas de Procedimiento Civil de 1958) hacían inaplicable la regla sobre imposición de costas a los procedimientos de expropiación forzosa, entonces Regla 44.4 de Procedimiento Civil de 1958, 32 LPRA Ap. II, actual Regla 44.1 de Procedimiento Civil de 2009, *supra*. Cuevas Segarra, *op. cit.*, pág. 1089.

A esos efectos, la Regla 58.10 de Procedimiento Civil de 1958, disponía que "[l]as costas no se regirán por la Regla 44.4 [de Procedimiento Civil de 1958, *supra*]". 32 LPRA Ap. II. La referida regla era una adaptación de la Regla 71A(l) de Procedimiento Civil Federal, en la actualidad consignada en la Regla 71.1(l) de Procedimiento Civil Federal, 28 USC. Comité Consultivo, *Anteproyecto de las Reglas de Enjuiciamiento Civil para el Tribunal General de Justicia*, 1954, pág. 155.[25]

Sin embargo, con la aprobación de las Reglas de Procedimiento Civil para el Tribunal General de Justicia de 1979 (Reglas de Procedimiento Civil de 1979), 32 LPRA Ap. III, dicha prohibición quedó en el pasado. Y es que

---

[24] Adviértase que la Sección 5(b) de la Ley de Expropiación Forzosa, 32 LPRA sec. 2908, fue posteriormente enmendada por la Ley Núm. 167-2015. No obstante, la versión vigente mantuvo un lenguaje esencialmente igual al citado.

[25] La Regla 58.10 de Procedimiento Civil de 1958, 32 LPRA Ap. II, adoptó el lenguaje propuesto en la Regla 58.10 del Anteproyecto de Reglas de Enjuiciamiento Civil para el Tribunal General de Justicia.

el Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico (Comité sobre Procedimiento Civil) optó por no incorporar la referida disposición a las Reglas de Procedimiento Civil de 1979. Así lo hizo constar en el *Informe sometido por el Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico según revisado por el Secretariado de la Conferencia Judicial* al incluir la siguiente anotación como parte de los comentarios a la Regla 58.9 propuesta: "**[…] Habiendo consentido el Estado a la imposición de costas, no debe eximirse de ello en el caso de expropiaciones forzosas y por ello se ha omitido la Regla 58.10 vigente**". (Énfasis nuestro). *Informe sometido por el Comité sobre Procedimiento Civil de la Conferencia Judicial de Puerto Rico según revisado por el Secretariado de la Conferencia Judicial*, 15 de septiembre de 1977, pág. 194, en http://ramajudicial.pr/sistema/supremo/conferencia/INFORME-COMITE-SOBRE-PROCEDIMIENTO-CIVIL-1978/CAPITULO%20IX.pdf.

Un lenguaje similar fue incluido en los comentarios a la Regla 58.9 de Procedimiento Civil de 1979, 32 LPRA Ap. III, al establecer que: "[…] **Se ha omitido la Regla 58.10 vigente debido a que el Estado ha consentido la imposición de costas y, por lo tanto, no debe eximirse de ello en el caso de expropiaciones forzosas**". (Énfasis nuestro). Reglas de Procedimiento Civil para el Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico de 1979, Tribunal Supremo de Puerto Rico,

febrero de 1979, pág. 216, en

https://www.ramajudicial.pr/sistema/supremo/conferencia/civil/Reglas-de-Procedimiento-Civil-1979.pdf.

Con relación a la derogación de la Regla 58.10 de Procedimiento Civil de 1958, *supra*, el tratadista José A. Cuevas Segarra expone, en lo pertinente, lo siguiente:

> Nuestro Comité Consultivo y el Secretariado de la Conferencia Judicial actuaron correctamente al proponer una norma que se aparta de la federal, aun cuando su alcance no surge claramente.
>
> La derogación de la Regla 58.10, sin más, podría dar lugar a que se interprete que ahora el Estado tiene derecho a recobrar costas en toda acción de expropiación que culmine a su favor, independientemente de si la compensación judicialmente adjudicada es mayor o menor a la estimada o depositada. Pero, obviamente, ese no ha sido el propósito de la derogación, a tenor con el comentario que se hizo y que hemos transcrito antes. **Para entender el alcance de la derogación es necesario armonizarla con la ley sustantiva de expropiación forzosa en cuanto al pago de intereses por la diferencia entre la suma estimada o depositada y la suma finalmente adjudicada.** 32 [LPRA] 2908. De manera, que examinada la intención legislativa que surge del comentario y de [la Sección 5(b) de la Ley de Expropiación Forzosa, *supra*] cabe enunciar las siguientes reglas en cuanto a las costas en estos procedimientos.
>
> .    .    .    .    .    .    .    .    .
>
> (2) Si el demandado impugna solamente la valoración hecha o la suma depositada por el demandante y resulta vencido, tiene que pagar las costas al Estado. Si prevalece las recobra.
>
> Si el demandado impugna ambas cosas y prevalece en la primera (autoridad para la

> expropiación), se considera
> vencedor y, por ende, recobrar
> sus costas de parte del Estado.
> Si prevalece sólo en la segunda,
> comoquiera se considera parte
> victoriosa con derecho a
> recobrar las costas incurridas
> para establecer la justa
> compensación alegada. (Énfasis
> nuestro). Cuevas Segarra, *op.
> cit.*, págs. 1089-1090.

Posteriormente, este Tribunal adoptó las Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V, las cuales fueron enmendadas y aprobadas por la Asamblea Legislativa a través de la Ley Núm. 220-2009. Reglas de Procedimiento Civil de Puerto Rico, Tribunal Supremo de Puerto Rico, septiembre de 2009, nota al calce Núm. 1, en http://ramajudicial.pr/sistema/supremo/conferencia/Reglas-de-Proc-Civil.pdf. Como asunto relevante, la Regla 58.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone, en síntesis, que:

> Las Reglas de Procedimiento Civil
> gobernarán el procedimiento para la
> expropiación forzosa de propiedad mueble e
> inmueble, **excepto en cuanto conflija con las
> disposiciones de esta regla o de una ley
> especial.** […]. (Énfasis nuestro). Íd.

De otro lado, y en consonancia con lo expuesto en las Secciones 5(a) y 5(b) de la Ley de Expropiación Forzosa, *supra*, la Regla 58.9 de Procedimiento Civil de 2009, 32 LPRA Ap. V, establece en parte que:

> **Si la compensación adjudicada
> finalmente a cualquier parte demandada
> excede la suma que se le haya pagado a dicha
> parte demandada al efectuar la distribución
> del depósito, el tribunal dictará sentencia
> contra la parte demandante y a favor de
> aquella parte demandada por dicha**

**deficiencia**. Si la compensación finalmente adjudicada a cualquier parte demandada fuese menos que la suma que se le haya pagado, el tribunal dictará sentencia contra la parte demandada y a favor de la parte demandante por el exceso. (Énfasis nuestro). Íd.

Con relación a los efectos del referido precepto, el profesor Rafael Hernández Colón comenta que:

> **Si la compensación adjudicada finalmente a cualquier demandado excediera la suma que se le hubiere pagado a dicho demandado al efectuar la distribución del depósito […] el tribunal dictará sentencia contra el demandante expropiante y a favor del demandado por dicha deficiencia** *condenando al expropiante al pago de costas*, si la compensación finalmente adjudicada a cualquier demandado fuere menos que la suma que se le hubiere pagado, el tribunal dictará sentencia contra él **-incluyendo el pago de costas-** y a favor del demandante por el exceso. (Énfasis nuestro). R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 5914, pág. 622.

Por su parte, las costas son "los gastos, necesariamente incurridos en la tramitación de un pleito o procedimiento, que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez". Hernández Colón, *op. cit.*, Sec. 4201, pág. 426. Véase, además, Garriga v. Tribunal Superior, 88 DPR 245, 253 (1963).

En nuestro ordenamiento, la concesión de costas está regulada por la Regla 44.1 (a) de Procedimiento Civil de 2009, *supra*. Ésta dispone lo transcrito a continuación:

> (a) Su concesión. - **Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia** en apelación o revisión, **excepto en aquellos casos en que se disponga lo contrario por**

**ley o por estas reglas**. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra. (Énfasis nuestro). Íd.

La Regla 44.1 (a) de Procedimiento Civil de 2009, *supra*, cumple con una función reparadora, pues procura resarcir a la parte que resulte victoriosa en el pleito mediante el reembolso de los gastos necesarios y razonables en los que tuvo que incurrir para que su teoría prevaleciera. Rosario Domínguez v. ELA, 198 DPR 197, 211 (2017); Maderas Tratadas v. Sun Alliance, *supra*, pág. 934; J.T.P. Dev. Corp. v. Majestic Realty Corp., *supra*, pág. 460. Por consiguiente, dicha disposición reglamentaria evita que el derecho de la parte prevaleciente quede "'menguado por los gastos que tuvo que incurrir sin su culpa y por culpa del adversario'". J.T.P. Dev. Corp. v. Majestic Realty Corp., *supra*, pág. 460 (citando a Garriga, Jr. v. Tribunal Superior, *supra*, pág. 253).

Debido a que se reconoce el derecho de la parte prevaleciente a recobrar las costas razonables y necesarias en las que incurrió durante el litigio, **una vez reclama su pago, la imposición de costas a la parte perdidosa es mandatoria**. Rosario Domínguez v. ELA, *supra*, pág. 212; Maderas Tratadas v. Sun Alliance, *supra*, pág. 934. Véase, además, J. A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, 1era ed. rev., Colombia, [s. Ed.], 2012, pág. 275. Sin embargo, esto no

implica que el pago de las costas sea automático, pues es necesario que la parte prevaleciente cumpla con el procedimiento dispuesto en la Regla 44.1(b) de Procedimiento Civil de 2009, *supra*. Rosario Domínguez v. ELA, *supra*, pág. 212.

A esos efectos, la Regla 44.1 (b) de Procedimiento Civil de 2009, *supra*, provee a la parte prevaleciente un término de diez (10) días, contados a partir de la notificación de la sentencia, para que presente y notifique a las demás partes un memorando de costas -juramentado o certificado por su representante legal- con todas las partidas de gastos y desembolsos incurridos que a su entender son correctas y fueron necesarias para la tramitación del pleito. Íd.; Rosario Domínguez v. ELA, *supra*, pág. 217. Establece también que, cualquier parte que no esté conforme con las costas reclamadas, dispondrá de un término de diez (10) días, contados a partir de la notificación del memorando de costas, para presentar su escrito en oposición. Regla 44.1 (b) de Procedimiento Civil de 2009, *supra*. Los términos dispuestos en esta regla son de naturaleza jurisdiccional, por lo que el foro primario carece de facultad para extenderlos. Rosario Domínguez v. ELA, *supra*, pág. 218.

La Regla 44.1 (b) de Procedimiento Civil de 2009, *supra*, dicta además que, ante la presentación de una oposición al memorando de costas, el tribunal considerará los argumentos de las partes y resolverá. Íd. No

obstante, de no haber impugnación, "el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas". Íd. En ese contexto, destacamos una vez más la gran discreción con la que cuenta el Tribunal de Primera Instancia para evaluar la razonabilidad y necesidad de los gastos presentados en el Memorando de costas. Rosario Domínguez v. ELA, *supra*, pág. 212. Finalmente, la resolución emitida por el foro primario a esos efectos podrá ser revisada por el Tribunal de Apelaciones a través del recurso de *certiorari*. Íd.

Por consiguiente, ante la oportuna presentación de un memorando de costas juramentado, el tribunal tendrá que realizar dos (2) determinaciones, a saber: cuál fue la parte que prevaleció en el pleito y, cuáles gastos incurridos por ésta fueron necesarios y razonables. J.T.P. Dev. Corp. v. Majestic Realty Corp., *supra*, pág. 461.

Ahora bien, al emplear la normativa expuesta no debemos perder de perspectiva que la obligación de reembolsar las costas incurridas en un pleito "aplicará a menos que exista una ley especial que releve de esa responsabilidad de pago […]". Echevarría Vargas, *op. cit.*, pág. 276. Véase, además, la Regla 44.1 (a) de Procedimiento Civil de 2009, *supra*.

Expuesto el derecho aplicable, procedemos a atender las controversias planteadas.

**III**

**A.**

Previo a considerar los méritos de la controversia ante nosotros, atenderemos varios planteamientos realizados por las partes.

En primer término, la parte con interés sostiene que carecemos de jurisdicción para atender las alegaciones del Gobierno que forman parte del tercer señalamiento de error que acordamos revisar, debido a que el Gobierno presentó su oposición al Memorando de costas fuera del término jurisdiccional de diez (10) días dispuesto por la Regla 44.1 (b) de Procedimiento Civil de 2009, *supra*.

Ciertamente, el Gobierno presentó la oposición al Memorando de costas pasado el término jurisdiccional aplicable. Sin embargo, no debe perderse de perspectiva que los términos dispuestos por la Regla 44.1 (b) de Procedimiento Civil de 2009, *supra*, sólo inciden en la facultad del foro primario para considerar el Memorando de costas y su oposición. Es decir, la presentación de alguno de los referidos escritos fuera del término jurisdiccional aplicable no afecta la jurisdicción que ostenta el Tribunal de Apelaciones ni este Tribunal para atender planteamientos dirigidos a cuestionar la corrección de la determinación del foro primario concediendo o denegando la imposición de costas. En otras palabras, el Gobierno se opuso fuera de término al memorando de costas y por lo tanto no pudo cuestionar

oportunamente las cantidades solicitadas en concepto de costas por la parte con interés. No obstante, el Gobierno sí podía, como en efecto hizo, cuestionar en apelación la concesión de costas como parte de este caso de expropiación forzosa.

Una interpretación contraria de la Regla 44.1 (b) de Procedimiento Civil de 2009, *supra*, daría al traste con lo dispuesto en la propia regla en cuanto a la revisión del dictamen sobre costas, pues implicaría que los foros apelativos careceríamos de jurisdicción para evaluar la corrección de la determinación del foro primario relacionada con la imposición de costas, así fuera su concesión o denegatoria, cuando los escritos concernientes han sido presentados de manera tardía ante ese foro.

Por tanto, resolvemos que al igual que el Tribunal de Apelaciones, este Tribunal ostenta jurisdicción para atender la controversia planteada en el tercer señalamiento de error.

Por otro lado, el Gobierno sostiene que el Tribunal de Apelaciones erró al determinar no atender un planteamiento presentado en la alternativa por primera vez ante dicho foro, por medio del cual cuestionó la totalidad de las partidas incluidas en el Memorando de costas. Afirma que se trataba de un planteamiento de estricto derecho revisable -a manera de excepción- por primera vez ante el foro apelativo. No le asiste la razón.

Como regla general los tribunales apelativos no debemos considerar planteamientos que no han sido presentados ante el foro primario. E.L.A. v. Northwestern Selecta, 185 DPR 40, 98 (2012). Sin embargo, hemos reconocido excepciones a esta norma general, entre éstas cuando el asunto esbozado por primera vez a nivel apelativo no suscita ninguna controversia de hecho y, por el contrario, solo involucra una cuestión de derecho cuya solución basta para dictar un fallo final en apelación. E.L.A. v. Northwestern Selecta, *supra*, pág. 56; Piovanetti v. Vilvadi, 80 DPR 108, 121-122 (1957).

Indudablemente, los planteamientos presentados por el Gobierno dirigidos a cuestionar las partidas aprobadas no cumplen con la excepción señalada. Por su naturaleza, era necesario que fueran presentados oportunamente ante el foro primario. Por tanto, concluimos que la mayoría del Panel actuó correctamente al declinar atender este asunto.

**B.**

Superados los escollos anteriores, nos corresponde determinar si el Gobierno autorizó el pago de costas en su contra en casos de expropiación forzosa. A su vez, debemos dilucidar quién es la parte prevaleciente en este tipo de casos. Veamos.

**(i) Imposición de costas al Gobierno en casos de expropiación forzosa**

A fin de determinar si el Gobierno consintió a la imposición de costas en su contra en pleitos de expropiación forzosa, es necesario que analicemos en

conjunto las disposiciones pertinentes de la Ley Núm. 104, la Ley General de Expropiación Forzosa, *supra*, la Regla 58 de Procedimiento Civil de 2009, *supra*, la intención del Comité sobre Procedimiento Civil al derogar la Regla 58.10 de Procedimiento Civil de 1958, *supra,* y la Regla 44.1 de Procedimiento Civil de 2009, *supra*.

Según expresáramos, a través de la Ley Núm. 104, el Gobierno autorizó la imposición de costas en su contra cuando resulta ser la parte perdidosa en las causas de acción presentadas al amparo de esa ley. Ahora bien, debido a que el referido estatuto establece que sus disposiciones no afectarán de forma alguna los procedimientos de expropiación forzosa, los cuales continuarán rigiéndose por las leyes aplicables, debemos dirigirnos a las disposiciones que regulan el referido procedimiento especial, entiéndase, la Ley de Expropiación Forzosa, *supra* y la Regla 58 de Procedimiento Civil de 2009, *supra.*

Ciertamente, ni la Ley de Expropiación Forzosa, *supra*, ni la Regla 58 de Procedimiento Civil de 2009, *supra*, disponen expresamente sobre la imposición del pago de costas en casos de expropiación forzosa. Lo anterior, nos faculta a recurrir al conocido principio de hermenéutica legal según el cual, "la letra de la ley debe interpretarse de manera cónsona con la intención legislativa que la inspiró". León Torres v. Rivera Lebrón, 2020 TSPR 21, 204 DPR ___ (2020).

Al respecto, vemos que, con la aprobación de las Reglas de Procedimiento Civil de 1979, quedó derogada la Regla 58.10 de Procedimiento Civil de 1958, *supra*, la cual prohibía expresamente la aplicación de la entonces Regla 44.4 de Procedimiento Civil de 1958, *supra*, actual Regla 44.1 de Procedimiento Civil de 2009, *supra*, a los casos de expropiación forzosa. El análisis del Comité sobre Procedimiento Civil que dio lugar a la derogación de la Regla 58.10 de Procedimiento Civil de 1958, *supra*, revelado en el comentario a la Regla 58.9 de Procedimiento Civil de 1979, *supra*, **denota, sin lugar a duda, que la derogación fue realizada con el fin de permitir la imposición de costas en contra del Gobierno en procedimientos de expropiación forzosa.** De acuerdo con el referido comentario, el Comité sobre Procedimiento Civil razonó que, habiendo el Gobierno renunciado a su inmunidad soberana frente al pago de costas en pleitos presentados al amparo de la Ley Núm. 104, no se justificaba que permaneciera una prohibición a la imposición de costas en contra del Gobierno en procedimientos de expropiación forzosa.

El estado de derecho sugerido por el Comité sobre Procedimiento Civil y adoptado en las Reglas de Procedimiento Civil de 1979, permaneció inalterado al aprobarse las Reglas de Procedimiento Civil de 2009. Vemos entonces que, actualmente, no existe un precepto de ley que impida la imposición de costas en contra del

Gobierno en casos de expropiación forzosa. Por el contrario, la prohibición anterior fue omitida pues se consideró innecesaria una vez el Gobierno autorizó, a través de la Ley Núm. 104, la presentación de reclamaciones e imposición de costas en su contra, en los casos presentados al amparo de esa ley.

De manera que, amparados en una interpretación razonable de las disposiciones estatutarias y reglamentarias mencionadas a la luz de los comentarios del Comité sobre Procedimiento Civil que dio lugar a la derogación de la Regla 58.10 de Procedimiento Civil de 1958, *supra*, **concluimos que procede la concesión de costas en los casos de expropiación forzosa y que el Gobierno autorizó la imposición de éstas en su contra cuando resulte ser la parte perdidosa en este tipo de casos**.

**(ii) Parte prevaleciente en casos de expropiación forzosa**

De otro lado, según explicáramos, a fin de determinar quién tiene derecho al pago de costas en un pleito, es necesario establecer cuál parte resultó victoriosa o prevaleciente en el mismo. Un examen de la Regla 44.1 de Procedimiento Civil de 2009, *supra*, hace innegable la afirmación de que ésta no provee una definición del término parte prevaleciente aplicable a toda situación de hechos. JTP Development Corp. v. Majestic Realty Corp., *supra*, pág. 464. Es por esta razón que, para establecer quién es la parte prevaleciente en un caso de expropiación

forzosa, es necesario que realicemos un análisis de lo dispuesto en las Secciones 5(a) y 5(b) de la Ley de Expropiación Forzosa, *supra*, y las Reglas 44.1 y 58.9 de Procedimiento Civil de 2009, *supra*.

Un examen conjunto de las Secciones 5(a) y 5(b) de la Ley de Expropiación Forzosa, *supra*, permite colegir que el tribunal dictará sentencia en contra del Gobierno en aquellos casos en los que la compensación finalmente concedida sea **mayor** a la cantidad fijada y depositada por aquel en el tribunal, en cuyo caso, el Gobierno deberá pagar sobre esa cantidad adicional, intereses, según dispuesto en las antedichas Secciones. A su vez, y cónsono con lo establecido en las referidas Secciones de la Ley de Expropiación Forzosa, *supra*, la Regla 58.9 de Procedimiento Civil de 2009, *supra*, señala cuál es la parte a favor de la cual se deberá dictar sentencia, **lo que dependerá de si la suma finalmente adjudicada por el tribunal como justa compensación es mayor o menor a la originalmente estimada y consignada por el Gobierno.**

De esta forma, considerando que la Regla 44.1(a) de Procedimiento Civil de 2009, *supra*, establece que las costas serán concedidas a la parte a favor de la cual se resuelva el pleito, **<u>determinamos que la parte prevaleciente en casos de expropiación forzosa será aquella a favor de la cual se dicte sentencia, según lo establecemos a continuación: el propietario del bien expropiado será la parte prevaleciente cuando reciba una</u>**

**suma mayor a la inicialmente consignada o prevalezca en el cuestionamiento de la autoridad para expropiar; mientras que se reconocerá como parte prevaleciente a la parte expropiante cuando la cantidad finalmente adjudicada en el caso sea igual o menor a la originalmente consignada.**

Ahora bien, una vez definido el término de parte prevaleciente para propósitos de concesión de costas en los casos de expropiación forzosa, nos resta resolver si la parte con interés fue la parte prevaleciente en el caso de epígrafe y si, por consiguiente, procedía la actuación del Tribunal de Primera Instancia de imponerle costas al Gobierno, confirmada por el Tribunal de Apelaciones.

Según surge del expediente, el Tribunal de Primera Instancia otorgó credibilidad y acogió las teorías propuestas por los peritos de la parte con interés. A base de éstas, **concedió una compensación mayor a la originalmente estimada y consignada por el Gobierno por concepto de justa compensación.** Así, la prueba pericial presentada por la parte con interés resultó determinante para que ésta pudiera recibir la totalidad de las cuantías reclamadas, **dictándose sentencia a su favor.** Consecuentemente, la parte con interés fue la parte prevaleciente en el presente caso.

El resultado alcanzado se fundamenta, esencialmente, en las distintas razones de política pública que subyacen tanto en el pago de intereses en los procedimientos de expropiación forzosa como en la concesión de costas en

general.    Y  es  que  ambas  remuneraciones  cumplen finalidades  distintas.    Como  mencionáramos,  el  pago  de intereses  -reconocido  en  nuestro  ordenamiento  como  parte integral  de  la  justa  compensación-  tiene  el  propósito  de resarcir  los  daños  ocasionados  al  dueño  del  bien expropiado  por  la  demora  del  Gobierno  en  pagar  la totalidad  de  la  justa  compensación.    En  contraste,  la concesión  de  costas  tiene  la  finalidad  de  reembolsar  a  la parte  prevaleciente  los  gastos  razonables  en  los  que  se vio  obligada  a  incurrir  sin  su  culpa  para  que  su  teoría prevaleciera.

Por  tanto,  en  el  presente  caso,  reiteramos  nuestros pronunciamientos  a  los  efectos  de  que  las  costas  no  forman parte  de  la  justa  compensación.    Pueblo v. García, *supra*, pág.  514.    No  obstante,  reconocemos  que  cuando  el  dueño del  bien  expropiado,  como  en  este  caso,  impugna  la  cuantía originalmente  consignada  por  el  Gobierno,  procura, precisamente,  ser  compensado  justamente,  entiéndase,  ser colocado  en  una  posición  pecuniaria  similar  a  la  que  se encontraría  de  no  haberse  realizado  la  expropiación. Cónsono  con  ello,  en  estos  casos,  al  reembolsar  los  gastos en  los  que  el  dueño  del  bien  tuvo  que  incurrir  en  la búsqueda  de  una  justa  compensación,  la  concesión  de  costas adelanta  el  referido  mandato  constitucional. Consecuentemente,  no  debe  existir  duda  acerca  de  que  el pago  de  intereses  no  sustituye  en  forma  alguna  la concesión  de  costas.

De conformidad con lo antes expuesto, resolvemos que la parte con interés fue la parte prevaleciente en el presente caso y, por tanto, le asistía el derecho a recobrar las costas razonables incurridas en el pleito. Por ende, el Tribunal de Apelaciones actuó correctamente al confirmar el dictamen del Tribunal de Primera Instancia que declaró *con lugar* el Memorando de costas presentado por la parte con interés.

## IV

Por los fundamentos que anteceden, se confirma la Sentencia del Tribunal de Apelaciones de 29 de abril de 2016.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Estado Libre Asociado
de Puerto Rico

    Peticionario

      v.                  CC-2016-662      *Certiorari*

El Ojo de Agua Development,
Inc.; John Doe y Richard Doe

    Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 9 de octubre de 2020.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte íntegra de la presente *Sentencia*, se confirma la *Sentencia* del Tribunal de Apelaciones de 29 de abril de 2016.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre sin opinión escrita.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo